JEFFREY U. BEAVERSTOCK, UNITED STATES DISTRICT JUDGE
This matter is before the Court on the Magistrate Judge's Report and Recommendation *1324 (Doc. 30), and Defendant A & G's Objection (Doc. 31). After de novo review of the record, and the benefit of oral argument on May 17, 2019, this Court REMANDS the action.
BACKGROUND
Stephen Jamar Shanks was injured in a job-related accident on April 24, 2018 while working for Globe Metallurgical, Inc., ("Globe") in Dallas County, Alabama. (Doc. 15, p. 3). On May 4, 2018, Plaintiffs Tommie Jean and Willie Lee Shanks, in their individual capacities and as "next to [sic ] friend(s)" of Stephen Jamar Shanks, sued Globe and several Fictitious Defendants. (Doc. 1-7, pp. 1 - 13). In their Original Complaint, Plaintiffs brought these claims against Globe and those Fictitious Defendants:
1) Worker's Compensation Benefits and Medical Expenses against Globe to which Stephen or his dependents are entitled;
2) Removal of Safety Devices against Fictitious Defendants A and B;
3) Removal of Safety Devices against Fictitious Defendants A and B;
4) Alabama Extended Manufacture Liability Doctrine against Fictitious Defendants C - H;
5) Failure to Worn [sic ] / Negligence against Fictitious Defendants;
6) Negligence / Failure to Warn or Guard against Fictitious Defendants C - H; and
7) Loss of Consortium against all Defendants.[1]
(Doc. 1-7, pp. 5 - 12). Stephen Shanks died on May 6, 2018, due to his injuries.
After Stephen's death, Plaintiffs filed their First Amended Complaint ( "FAC") in the Dallas County Circuit Court. (Doc. 1-7, pp. 191 - 204). In the FAC, Plaintiffs added Erica Acoff "both individually as a dependent of Stephen Jamar Shanks deceased, and as a next of friend to JAMAR ACOFF, a minor child and dependent of Stephen Jamar Shanks deceased." (Doc 1-7, p. 192). In the FAC, Tommie Jean and Willie Lee Shanks remained parties in their capacities as "individual(s)" and "next to [sic] friends" of Stephen Jamar Shanks. (Id. ). Plaintiffs also named Defendants A & G Manufacturing, Inc. ("A & G") and Yale Carolinas, Inc. ("Yale"), bringing third party tort claims against them. (Doc. 1-7, pp. 196 - 204). Last, Plaintiffs asserted claims against Fictitious Defendants 'A,' 'B,' and 'C' for the removal of safety devices. Plaintiffs identified those Fictitious Defendants:
... those Alabama resident adult citizens who were co-employees of Stephen Jamar Shanks whose willful, intentional, and otherwise wrongful acts either caused or contributed to cause the injuries and damages to the Plaintiffs, all of whose true and correct names are unknown to the Plaintiffs at this time but will be substituted by amendment once ascertained ...
(Doc. 1-7, p. 194). Plaintiffs brought these claims in their FAC:
1) A claim for worker's compensation benefits against Globe for compensation and medical care expenses;
2) Removal of Safety Devices against Fictitious Defendants A - C;
3) Removal of Safety Devices against Fictitious Defendants A - C;
4) An AEMLD claim against A & G and Yale;
5) A Dual Capacity claim against Globe;
*1325 6) A claim for Failure to Warn or Guard against A & G and Yale;
7) An AEMLD claim against Fictitious Defendants D - F;
8) A Negligent Failure to Warn / Guard claim against Fictitious Defendants D - F;
9) A Negligent Failure to Inspect claim against Fictitious Defendants G - I; and
10) A Loss of Consortium Claim by Tommie Jean and Willie Lee Shanks against all Defendants.[2]
(Doc. 1-7, pp. 195 - 204).
After Plaintiffs filed their FAC, Defendant A & G, with the consent of Defendants Globe and Yale, removed this action to this Court under 28 U.S.C. §§ 1332, 1441, and 1446. In its Notice of Removal, A & G claimed this Court had diversity jurisdiction over Plaintiffs' claims against it, Yale, and Globe Manufacturing (insofar as the claims against Globe did not concern the Alabama Worker's Compensation Act). (Doc. 1, p. 2). A & G cited Lamar v. The Home Depot , 907 F. Supp. 2d 1311 (S.D. Ala. 2012), in which this Court held that when an action is removed on diversity grounds under 28 U.S.C. 1441(a) and the action contains non-removable claims under 28 U.S.C. 1445(c), the Court shall sever and remand the non-removable claims and maintain jurisdiction over the claims properly removed.[3]
On January 2, 2019, Plaintiffs filed their Second Amended Complaint ( "SAC"), under Rule 15(a)(1) of the Federal Rules of Civil Procedure. In the SAC, Plaintiffs substituted Scott Patterson, Steve Smith and Antonio Williams - three non-diverse co-employees - for Fictitious Defendants 'A,' 'B,' and 'C'. (Doc. 15, pp. 2 - 3). In their SAC, Plaintiffs are pursuing these claims against Defendants Globe, A & G, Yale, and the newly-substituted co-employee Defendants:
1) A Worker's Compensation Claim against Globe for compensation and medical care expenses;
2) - 4)[4] Claims under AEMLD, Breach of Warranty, and Negligence against A & G and Yale
5) Claims for Removal of / Failure to Install or Maintain / By-Passing Safety Devices or Guards against co-employee Defendants; and
6) Loss of Consortium Claim by Tommie Jean and Willie Lee Shanks against all Defendants.[5]
(Doc. 15, pp. 3 - 7).
After filing their SAC, Plaintiffs filed a Motion to Remand this action to State *1326 court (Doc. 16). In their Motion, Plaintiffs argue this Court was divested of jurisdiction following the addition of non-diverse Defendants. Plaintiffs also argue even if this Court were to hold Lamar as the law of the District, (which it does), their addition of non-diverse parties distinguishes this action from Lamar and divested this Court of subject matter jurisdiction. A & G filed a response, (Doc. 24) to which Plaintiffs filed a Sur-reply. (Doc. 29).
On March 12, 2019, Judge Murray issued a Report and Recommendation ("R & R") recommending that the entire action be remanded to the Dallas County Circuit Court, as this Court lacked subject matter jurisdiction after Plaintiffs added the three non-diverse co-employee Defendants. (Doc. 30). The R & R was based on an analysis of 28 U.S.C. § 1447(e) and authority from the Sixth Circuit. (Id. , pp. 5 - 9). Judge Murray found that the claims against the non-diverse Defendants did not arise under the Alabama Worker's Compensation Act, and therefore, that 28 U.S.C. § 1445(c) did not prohibit their removal. Rather, as those claims had been properly removed, the joinder of non-diverse parties relative to those claims, after removal, divested the Court of diversity jurisdiction.
A & G objected to Judge Murray's R & R, arguing that the claims brought against the substituted non-diverse co-employee Defendants arose under the Alabama's Worker's Compensation Act, were unremovable under 28 U.S.C. § 1445(c), and were therefore due to be severed and remanded under Lamar . A & G argued that Ala. Code § 25-5-53 displaced all common law actions against co-employees and created causes of action for "willful conduct" under Ala. Code 25-5-11(c)(2). A & G's position is that the Alabama Worker's Compensation Act provides the only means of redress Plaintiffs seek. Specifically, A & G noted the legislative and jurisprudential history of that statute. A & G contended that § 25-5-53's dictate that "the rights and remedies granted in this chapter to an employee shall exclude all other rights and remedies of the employee ... at common law, by statute, or otherwise on account of injury, loss of services, or death," combined with Ala. Code 25-5-11(d)(2)'s definition of "willful conduct," clearly indicate that Plaintiffs' co-employee claims arose under the Alabama Worker's Compensation statute. (Doc. 31, pp. 5-9). This Court conducted a hearing at which Plaintiffs' counsel argued that Ala. Code § 25-5-53 simply provided the statutory vehicle to assert co-employee "willful conduct" claims, and that such claims do not arise under Alabama's Worker's Compensation Act.
DISCUSSION
This Court agrees with Judge Murray's conclusion that the claims against A & G, Yale, and Globe were within the Court's subject matter jurisdiction at the time of removal. (Doc. 30, p. 4). All Plaintiffs were diverse from all named Defendants and the amount in controversy exceeded the threshold minimum. (Id. ). The Court, though, finds it beneficial to conduct an independent analysis as to whether the co-employee claims arise under Alabama's Worker's Compensation Act.
I. Lamar v. The Home Depot
As noted above, Lamar directs this Court to exercise jurisdiction over claims properly removed notwithstanding other claims which arise under a state worker's compensation statute and are therefore not removable. The combination of claims properly removed under 28 U.S.C. § 1441(a) with claims that are not removable under 28 U.S.C. § 1445(c) triggers the sever and remand procedure outlined in that case. See *1327 Lamar , 907 F. Supp. 2d at n. 3. Therefore, this Court must answer whether the claims brought against the substituted non-diverse Defendants arise under the Alabama Worker's Compensation Act.[6] If those claims do not arise under the Act, they were properly removed and the substitution of the non-diverse Defendants deprives this Court of diversity jurisdiction.
In his R & R, Judge Murray found that the claims against the substituted co-employees did not arise under the Alabama Worker's Compensation Act, relying on Ala. Mun. Workers Comp. Fund, Inc. v. P.R. Diamond Prod., Inc. , 234 F. Supp. 3d 1165 (N.D. Ala. 2017). (Doc. 31, p. 12). In Diamond , the plaintiff, Alabama Municipal Worker's Compensation Fund, Inc. ("AMWCF") brought an action against PR Diamond Products, Inc. ("Diamond") pursuant to Ala. Code § 25-5-11(d). That provision gives an injured employee's employer or its insurance carrier six months to bring a tort action against a third party where the injured employee did not file a lawsuit against a third party within the applicable statute of limitations. Id. That court found the plaintiff's claims did not arise under the Alabama Worker's Compensation Act, relying, in part, on the Eleventh Circuit's decision in Reed v. Heil Co. , 206 F.3d 1055 (11th Cir. 2000) :
In Reed v. Heil Co. , the Eleventh Circuit held that a claim of retaliatory discharge, brought pursuant to Alabama Code § 25-5-11.1, arose under the Alabama Worker's Compensation Act for purposes of § 1445(c). The Court explained that the "retaliatory discharge cause of action increases workers' willingness to file compensation claims, and it limits employers' ability to discourage them. In so doing, § 25-5-11.1 encourages prompt and thorough medical attention for workplace injuries. Id. at 1060.
[...]
[A]ctions like the one brought by AMWCF have little effect on the willingness of workers to bring claims, the ability of employers to discourage claims, or the availability of medical care in the workplace . Thus, Reed provides no justification for treating AMWCF's claims as arising under Alabama's workmen's compensation laws. Instead, Reed suggests that tort claims, like AMWCF's, should be treated differently from retaliatory discharge claims that do arise under the workmen's compensation scheme. Generally, "[a] lawsuit arises under the law that creates the cause of action." Am. Well Works v. Layne , 241 U.S. 257, 36 S. Ct. 585, 60 L.Ed. 987 (1916). AMWCF's claims of failure to warn, fraudulent representation, and breach of implied warranty were created by the laws of tort and contract . (See Doc. 1-2, pp. 57-59). The Alabama Worker's Compensation Act is merely the statutory vehicle by which AMWCF is able to bring the action to *1328 court. Thus, § 25-5-11(d) of the Alabama Worker's Compensation Act "may regulate the prosecution of [AMWCF's] claims," but the action is ultimately one in tort and contract, and it does not arise under the Alabama Worker's Compensation Act for purposes of § 1445(c). See Houston , 597 F. Supp. at 991. Accordingly, § 1445(c) does not require remand in this case.
P.R. Diamond Prods., Inc. , 234 F. Supp. 3d at 1171-72 (emphasis added). In sum, the Diamond Court found that claims that concerned an underlying common law cause of action did not "arise under" Alabama's Worker's Compensation Act because those claims did not concern "the willingness of workers to bring claims, the ability of employers to discourage claims, or the availability of medical care in the workplace." Id. at 1172. Thus, the Diamond Court appeared to focus more on policy considerations and less on whether the Alabama Worker's Compensation Act created the cause of action that plaintiff pursued.
A & G contends - and is correct - that the nature of the claims now at issue and those in Diamond are dissimilar. Here, Plaintiffs are not an employer or an insurance carrier pursuing a claim on behalf of an injured employee who failed to do so during the statute of limitations period, as contemplated in Ala. Code § 25-5-11(d). Plaintiffs nevertheless argue that these co-employee claims do not arise under the Act because they are creatures of common law. This Court agrees with Plaintiffs for the reasons set out below.
II. Arising Under Ala. Code § 25-5-11(d)
A & G's argument that the Alabama Worker's Compensation Act appears to create a cause of action for willful conduct is plausible, but ultimately unpersuasive. While not directly addressed by either party, the Court must examine - in greater detail - the jurisprudential history of claims of this particular nature and the various iterations of Alabama worker's compensation laws to determine whether these claims are creatures of the Act.
Alabama's first semblance of worker's compensation legislation, the Alabama Employer's Liability Act (or "AELA"), was enacted in 1886. Prior to the enactment of that (and subsequent) legislation, employees
... found themselves in one of three situations: they had to prove that their injury was the fault of their employer via a tort claim , they were at the mercy of their employer's benevolence in caring for them beyond what the law required, or their families became stigmatized with poverty. The tort system was laden with so many obstacles that injured workers experienced extremely poor success in obtaining any recovery.
1 ALABAMA WORKERS COMPENSATION LAW AND HANDBOOK § 1.01 (emphasis added). These common law causes of action were difficult to sustain. Before workers compensation statutes, cases were frequently dismissed or overturned on appeal as workers (or their estates) confronted substantial impediments to tort recovery.[7] Recovery by *1329 injured employees (and the families of deceased employees) was made more difficult by assumption of the risk, contributory negligence, and the fellow servant doctrine defenses. While the fellow servant doctrine shielded employers from most common law negligence actions where a co-employee's negligence caused the underlying injury, contributory negligence and assumption of the risk made it difficult for injured workers to carry causes of action against an employer and co-employees. 1 ALABAMA WORKERS COMPENSATION LAW AND HANDBOOK § 1.01.
This Court found that the overwhelming majority of cases dealing with employees' common law rights in Alabama[8] concerned those actions where an employee filed suit against an employer on the theory that the employer was negligent in hiring the co-employee accused of causing the injuries at issue.[9] In a majority of cases, the common law was silent as to whether an employee had a common law right of action against a co-employee for injuries resulting from a co-employee's "willful conduct." However, this Court found two Alabama cases that deal with whether a servant (employee) could be held liable, generally, for his willful conduct during the course of his work. In a case concerning an employee's actions that caused a steamboat accident, the Alabama Supreme Court stated:
That for the acts of the agent , or servant, willfully and intentionally done, without the command or authorization of the master, the servant is liable, and the master is not. [...] It seems to be well settled that if the servant be in the performance of a duty entrusted to him, and, from a want of either skill or diligence, injure another, it will not excuse the master or employer, even if the servant, in the matter complained of, was acting contrary to instructions. Trusting the servant in the given case, is an assumption by the master of all responsibility which results from negligence or want of skill in the servant. But this rule does not apply, when the servant actually wills and intends the injury, or steps aside from the purpose of the agency committed to him, and inflicts and independent wrong.
Cox, Brainard & Co. v. Keahey , 36 Ala. 340, 343-44 (1860) (emphasis added). Similarly, in an action concerning an employee's trespass in 1853, the Court noted:
According to this principle, a master is not liable in trespass vi et armis for injuries done by his servant, which are *1330 willful [sic ] on the part of the servant , and of which the master is ignorant, although done in the course of the master's business. If injuries are done by the servant in the course of the master's business, which result from negligence or want of proper care or skill on the part of the servant, the master will be liable, it is true, but only in an action on the case; for there the gist of the action is the negligence of the servant, and for that the master is lawfully liable, although not for the willful [sic ] torts of his servant .
Lindsay v. Griffin , 22 Ala. 629, 630 (1853) (emphasis added). Taken together, Cox and Lindsay appear to contemplate that an employee could be held liable - at common law - for his willful conduct while in the service of his employer. In other words, employee liability for willful conduct certainly arose under the common law. Accordingly, there is some precedent to imply that the common law allowed an action by an employee against a co-employee for injuries that resulted from a co-employee's willful acts in the course of employment.[10] The Court now turns to the question of whether the Alabama Worker's Compensation Act abrogated that common law.
As noted in Diamond , "[a] lawsuit arises under the law that creates the cause of action." P.R. Diamond Prods., Inc. , 234 F. Supp. 3d at 1172. There is no question that the Alabama Worker's Compensation Act allows for causes of action against co-employees. In relevant part, the provision giving such permission states the following:
If the injury or death for which compensation is payable under Articles 3 or 4 of this chapter was caused under circumstances also creating a legal liability for damages on the part of any party other than the employer, ... the employee, or his or her dependents in case of death, ... may bring an action against the other party to recover damages for the injury or death, and the amount of the damages shall be ascertained and determined without regard to this chapter. If a party ... is an officer, director, agent, or employee of the same employer, or his or her personal representative, the injured employee, or his or her dependents in the case of death, may bring an action against any ...
*1331 person, or his or her personal representative, only for willful conduct which results in or proximately causes the injury or death.
Code of Ala. § 25-5-11(a) (emphasis added). Excerpts in this section indicate that the Act does not create the claims Plaintiffs pursue against the co-employee Defendants. The phrase, "if the injury or death ... was caused under circumstances also creating legal liability for damages ...," implies that this legal liability was not created by the statute. In fact, this excerpt suggests the opposite - that the liability existed under other circumstances prior to the Act. The Court cannot reconcile the plain text of the statute with the proposition that the Act creates this cause of action.
A & G insists, though, that additional provisions in the Act require this Court find otherwise. A & G argues that §§ 25-5-11(a), (b), and (c), in conjunction, provide that common law co-employee actions were abolished and re-constituted by the Act. (Doc. 31, p. 11). In §§ 25-5-11(b) and (c)(2), the Legislature defined "willful conduct" the following way:
(b) If personal injury or death to any employee results from the willful conduct, as defined in subsection (c) herein, of any ... employee of the same employer ... the employee shall have a cause of action against the person ...
(c) As used herein, "willful conduct" means any of the following:
[...]
(2) The willful and intentional removal from a machine of a safety guard or safety device provided by the manufacturer of the machine with knowledge that injury or death would likely or probably result from the removal; provided, however, that removal of a guard or device shall not be willful conduct unless the removal did, in fact, increase the danger in the use of the machine and was not done for the purpose of repair of the machine or was not part of an improvement or modification of the machine which rendered the safety device unnecessary or ineffective.
A & G's argument does not prevail. The Supreme Court of Alabama has found that "the legislature limits employee's claims for damages, where workmen's compensation benefits are payable ..." Reed v. Brunson , 527 So. 2d 102, 113 (Ala. 1988) (emphasis added); see also, Layne v. Carr , 631 So. 2d 978, 982 (Ala. 1994) ("The legislature expressly limited exceptions to the exclusivity of the workers' compensation scheme.") (Emphasis added).[11] In both cases, the Court found that the State Legislature did not usurp or eradicate the common law as it pertained to an employee's willful conduct. In fact, the Legislature merely preserved and limited, rather than abrogated and re-constituted, employee liability for willful conduct that was previously available at common law. As such, this appears to be a case contemplated by other districts, wherein the claims are found only to "relate" to Alabama's Worker's Compensation Act.[12]
*1332 Therefore, after careful review, this Court finds these claims do not arise under Alabama's Worker's Compensation Act. The Act is the statutory vehicle by which a plaintiff can pursue claims against co-employees.[13]
III. 28 U.S.C. § 1447(e) and Remand
As the co-employee claims do not arise under the Alabama Worker's Compensation Act, the Court must next determine whether it has jurisdiction over the case following the addition of non-diverse defendants. Section 1447(e) provides: "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." As Plaintiffs substituted three non-diverse co-employees for Fictitious Defendants 'A,' 'B,' and 'C' following removal, 1447(e)'s *1333 framework applies. Further, as noted in Judge Murray's R & R, the Court is encouraged to undertake a § 1447(e) analysis regardless of whether the amendments were made as a matter of course, as Plaintiffs' were here. For the reasons articulated in Judge Murray's R & R, this Court agrees that the entire action is due to be remanded based on the analysis of the four factors outlined in the R & R. (Id. at pp. 8 - 11).
IV. Conclusion
Because Plaintiffs' co-employee claims do not arise under the Alabama Workers' Compensation Act, and complete diversity was destroyed following the joinder of three non-diverse co-employee Defendants after removal, this Court REMANDS this entire action to the Dallas County Circuit Court.
DONE and ORDERED this 20th day of June, 2019.
REPORT AND RECOMMENDATION
P. BRADLEY MURRAY, UNITED STATES MAGISTRATE JUDGE
On January 3, 2019, Plaintiffs filed a Motion to Remand this action to the Circuit Court of Dallas County, Alabama, on the ground that this Court lacks jurisdiction. (Doc. 16). Defendant A & G Manufacturing, Inc. d/b/a A & G Mercury ("A & G") filed a response in opposition to the motion to remand on January 23, 2019 (Doc. 24), and Plaintiffs filed a reply brief on January 30, 2019 (Doc. 29). Plaintiffs' motion has been referred to the undersigned Magistrate Judge for entry of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. Gen LR 72(a)(2)(S). Upon consideration of all relevant filings in this case, the undersigned recommends that Plaintiffs' motion to remand be GRANTED and that this action be REMANDED to the Circuit Court of Dallas County, Alabama.
BACKGROUND
On April 24, 2018, Stephen Jamar Shanks, while employed by Defendant Globe Metallurgical, Inc. ("Globe"), was seriously injured in a job-related accident. Stephen died on May 6, 2018 as a result of his injuries. Plaintiffs Tommy Jean Shanks and Willie Lee Shanks, Stephen's parents, filed a complaint against Globe and several fictitious defendants seeking worker's compensation benefits and damages based on claims alleging removal of safety devices, products liability, and negligent failure to warn or guard on May 4, 2018 in the Circuit Court of Dallas County, Alabama. (Doc. 1-1). On October 24, 2018, Plaintiffs filed their First Amended Complaint adding Erica Acoff, individually, as a dependent of Stephen, and as next friend of Jamar Acoff, a minor and dependent of Stephen, as a plaintiff and adding A & G and Yale Carolinas as defendants. (Doc. 1-2 at p. 5). In the amended complaint, Plaintiffs continued to assert claims against fictitious defendants. Plaintiffs identified "Fictitious Defendants 'A,' 'B,' and 'C' [as] those Alabama resident adult citizens who were co-employees of Stephen Jamar Shanks whose willful, intentional, and otherwise wrongful acts either caused or contributed to cause the injuries and damages to the Plaintiffs...." (Id. at p. 7). Plaintiffs' first amended complaint included a worker's compensation claim for death benefits against Globe, a "dual capacity" theory of tort liability against Globe, and third-party tort claims against A & G and Yale, as well as state-law tort claims against fictitious defendants.
Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant A & G, with the consent of Defendants Globe and Yale, filed a Notice of Removal of this action to this Court *1334 on December 5, 2018, in which it alleged complete diversity between Plaintiffs and Defendants and an amount in controversy in excess of $75,000. (Doc. 1).[1] On January 2, 2019, Plaintiffs filed a second amended complaint, pursuant to Rule 15(a)(1) of the Federal Rules of Civil Procedure, in which they added Scott Patterson, Steve Smith, and Antonio Williams, three of Stephen's co-employees at Globe, who had previously been described in the first amended complaint as Fictitious Defendants A, B, and C. (Doc. 15 at pp. 1-3). Because these three defendants, like Plaintiffs, are residents of Alabama, Plaintiffs filed a motion to remand this action to state court on January 3, 2019 based on lack of diversity jurisdiction. (Doc. 16).
CONCLUSIONS OF LAW
Defendant A & G removed this action to federal court, with the consent of Defendants Globe and Yale, on December 5, 2018 on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. Because A & G removed this case to federal court, it has the burden of proving that federal jurisdiction exists. See Pacheco de Perez v. AT & T Co. , 139 F.3d 1368, 1380 (11th Cir. 1998) ; Brown v. Endo Pharmaceuticals, Inc. , 38 F. Supp. 3d 1312, 1321 (S.D. Ala. 2014). "Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly," and "all doubts about jurisdiction should be resolved in favor of remand to state court ." Univ. of S. Ala. v. Am. Tobacco Co. , 168 F.3d 405, 411 (11th Cir. 1999) (emphasis added); see also Burns v. Windsor Ins. Co. , 31 F.3d 1092, 1095 (11th Cir. 1994) (holding that any questions or doubts are to be resolved in favor of returning the case to state court).
Section 1332(a)(1) provides, in relevant part, that "the district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 ... and is between ... citizens of different States." For purposes of §§ 1332 and 1441, "a corporation shall be deemed to be a citizen of every State ... by which it has been incorporated and of the State ... where it has its principal place of business...." 28 U.S.C. § 1332(c)(1). The parties do not dispute that the amount in controversy exceeds $75,000. (Doc. 1 at pp. 5-6; Doc. 16 at p. 5). At the time of removal, the operative complaint was Plaintiffs' First Amended Complaint, which had been filed in state court on October 24, 2018. (Doc. 1 at pp. 3-4). In the First Amended Complaint, Plaintiffs asserted a claim for worker's compensation benefits against Globe, a claim under the Alabama Extended Manufacturer's Liability Doctrine ("AELMD") against A & G and Yale, a dual capacity of employer as designer of manufacturer claim against Globe, a negligent failure to warn or guard claim against A & G and Yale, and several claims against fictitious defendants. For the purpose of assessing the propriety of removal based on diversity jurisdiction, the citizenship of parties sued under fictitious names is to be disregarded. 28 U.S.C. § 1441(b)(1) ; see Walker v. CSX Transp., Inc. , 650 F.3d 1392, 1395 n.11 (11th Cir. 2011) (noting "that the fictitious defendants were likely Georgia citizens did not destroy complete diversity because § 1441(a) requires that fictitious 'named' parties be disregarded for purposes of diversity jurisdiction").
The threshold issue is whether complete diversity existed at the time of removal between all Plaintiffs and all named Defendants. According to the First Amended *1335 Complaint, Plaintiffs are each residents and citizens of Dallas County, Alabama. (Doc. 1-2 at p. 6). Defendant Globe is incorporated under the laws of Delaware and has its principal place of business in Beverly, Ohio. (Doc. 1-2 at p. 6; Doc. 1-3 at p. 1). Defendant A & G is incorporated under the laws of Ohio and has its principal place of business in Galion, Ohio. (Doc. 1-2 at p. 7; Doc. 1-4 at p.2). Defendant Yale is incorporated under the laws of the state of North Carolina and has its principal place of business in Charlotte, North Carolina. (Doc. 1-2 at p. 7; Doc. 1-5 at p. 2). Because all Plaintiffs and all Defendants were diverse in citizenship and because the amount in controversy was met, federal jurisdiction based on diversity of citizenship was present at the time of removal. Yet, Plaintiffs argue that the case is due to be remanded on two grounds. First, Plaintiffs assert that this Court cannot exercise jurisdiction over a claim for worker's compensation benefits under the Alabama Worker's Compensation Act, such as the claim asserted against Globe in the First Amended Complaint. Second, Plaintiffs argue that this case is due to be remanded in its entirety because, shortly after removal and within the time period allowed for amending the complaint without leave of court, Plaintiffs amended their complaint to add three defendants who are residents of Alabama and, therefore, not diverse from Plaintiffs. Plaintiffs argue that, because complete diversity no longer exists, this Court no longer has subject matter jurisdiction and this action is due to be remanded in toto. The Court will address the second ground raised by Plaintiffs first.
The issue presented is whether the amendment to the complaint, which essentially substituted three named defendants for previously identified fictitious defendants and which unquestionably destroyed complete diversity, also divested this Court of federal subject matter jurisdiction. On January 2, 2019, Plaintiffs filed their Second Amended Complaint, pursuant to Rule 15(a)(1) of the Federal Rules of Civil Procedure, as a matter of course, as it was filed within 21 days of service of a responsive pleading. (Doc. 15). In the Second Amended Complaint, Plaintiffs added claims against three co-employees of Plaintiff who reside in Alabama. (Doc. 15 at pp. 2-3). The claims asserted against these Defendants were the same or substantially similar to claims that had been made against fictitious defendants in the First Amended Complaint, which had been filed in state court prior to removal. The fictitious defendants were identified in the First Amended Complaint as follows: "Fictitious Defendants 'A,' 'B,' and 'C' are those Alabama resident adult citizens who were co-employees of Stephen Jamar Shanks whose willful, intentional, and otherwise wrongful acts either caused or contributed to cause the injuries and damages to the Plaintiffs, all of whose true and correct names are unknown to the Plaintiffs at this time but will be substituted by amendment once ascertained." (Doc. 1-2 at p. 7).
Neither the Federal Rules of Civil Procedure, the removal statutes, or previous decisions in the Eleventh Circuit directly address whether the exact situation presented here constitutes a joinder of additional parties which would invoke the provisions of 28 U.S.C. § 1447(e)[2] or whether adding named non-diverse defendants in place of fictitious defendants within the time allowed for amending as of course *1336 automatically divests the court of subject matter jurisdiction based on diversity. Having reviewed cases in both this jurisdiction, as well as others, and examined the applicable rules and statutes, the Court finds that holdings in other jurisdictions that have addressed this issue are instructive here. Some cases have indicated that the decision to deny or permit joinder that is required by § 1447(e) must be made by the court even when an amendment is made as a matter of course pursuant to Rule 15(a)(1). For example, in Dunigan v. Countrywide Home Loans, Inc. , the court held that "[a]lthough § 1447(e) mentions joinder specifically, the statute has been held to apply when a plaintiff seeks to amend a complaint to replace "John Doe" defendants with defendants identified by name." Civ. A. No. 1:08-CV-3735-CC, 2009 WL 10698799, at *3 (N.D. Ga. Sept. 10, 2009) (citing Doleac ex re. Doleac v. Michalson , 264 F.3d 470, 476-77 (5th Cir. 2001) ; Casas Office Machs., Inc., v. Mita Copystar Am., Inc. , 42 F.3d 668, 673-75 (1st Cir. 1994) ). On the other hand, in Curry v. U.S. Bulk Transportation, Inc. , the Sixth Circuit found that "[p]ersuasive authority counsels that in a situation such as this where an amended complaint is filed to include the identity of a previous unidentified defendant, diversity must be determined at the time of the filing of the amended complaint." 462 F.3d 536, 540 (6th Cir. 2006). In Curry , the Sixth Circuit reversed the district court's entry of summary judgment in favor of the defendant on the ground that the district court lacked subject matter jurisdiction over the action when two defendants were identified and substituted as non-diverse defendants after removal. Id. at 539-43. Even though the plaintiff did not file a motion to remand, the Sixth Circuit indicated that once the complaint was amended to add non-diverse parties, the district court lacked jurisdiction over the action and should have sua sponte remanded the case. Id.
After thoughtful consideration, this Court concludes that it is not necessary for it to decide between these two options because the result would be the same in this case under either option. If this Court adopts the reasoning set forth in Curry , the amendment naming non-diverse defendants in place of fictitious defendants, which was filed after removal, but within the time allowed for amendments as a matter of course, would result in a finding that diversity and, therefore, subject matter jurisdiction did not exist as of the time of the filing of the amended complaint. Accordingly, remand would seemingly be appropriate without any further analysis. However, if the Court follows the reasoning of courts that find that § 1447(e) applies to amendments adding parties as a matter of course, then the Court must determine whether to "(1) deny joinder; or (2) permit joinder and remand [plaintiffs'] case to state court." Ingram v. CSX Transp., Inc. , 146 F.3d 858, 862 (11 Cir. 1998) (noting that a district court has no discretion to add a non-diverse defendant, then "retain jurisdiction and decide the case on the merits"). "The determination of which of these options is more appropriate in a particular case 'is left to the discretion of the district court.' " Starnes Davis Florie, LLP v. GOS Operator, LLC , Civ. A. No. 12-0387-WS-N, 2012 WL 3870413, at *3 (S.D. Ala. Sept. 5, 2012) (quoting Fontainebleau Gardens Condominium Ass'n, Inc. v. Pacific Ins. Co. , 768 F. Supp. 2d 1271 (S.D. Fla. 2011) ).
Although allowing joinder that would destroy diversity is within the discretion of the district court, case law within the Eleventh Circuit, as well as other circuits, instructs courts to consider four factors in evaluating whether to permit joinder pursuant to § 1447(e) : "(1) the extent to which *1337 the purpose of the amendment is to defeat federal jurisdiction, (2) whether the plaintiff has been dilatory in asking for the amendment, (3) whether the plaintiff will be significantly injured if the amendment is not allowed, and (4) any other factors bearing on the equities." Id. (quoting Scipione v. Advance Stores Co., Inc. , No. 8:12-cv-687-T-24-AEP, 2012 WL 3105199, at *2 (M.D. Fla. July 31, 2012) (citations and internal quotation marks omitted)); see also Hensgens v. Deere & Co. , 833 F.2d 1179, 1182 (5th Cir. 1987) ; Holiday Isle, LLC v. Clarion Mortg. Capital, Inc. , Civ. A. No. 07-00798-CG-C, 2008 WL 1756369, at *2 (S.D. Ala. Apr. 11, 2008). "This framework is designed to facilitate the balancing of the defendant's interest in maintaining a federal forum with the competing interest disfavoring parallel lawsuits in federal and state courts." Holiday Isle , 2008 WL 1756369, at *2.
The first factor to consider is the extent to which the purpose of Plaintiffs' amendment is to defeat federal jurisdiction. In this case, it is clear that, at the time the First Amended Complaint was filed in state court, approximately six weeks prior to removal, Plaintiff intended to substitute individual defendants "who were co-employees of Stephen Jamar Shanks whose willful, intentional, and otherwise wrongful acts either caused or contributed to cause the injuries and damages to the Plaintiffs" and that Plaintiffs did not know the exact identity of those individuals at that time. (Doc. 1-2 at p. 7). There is no indication in this case that Plaintiffs amended their complaint to add the individual co-employee defendants for the purpose of defeating federal jurisdiction. See Adams v. Int'l Paper Co. , Civ. A. 17-0105-WS-B, 2017 WL 1828908, at *4 (S.D. Ala. May 5, 2017) (finding the plaintiffs met this factor when "the amended pleading simply presented the claims that plaintiffs had always intended to bring, under theories that plaintiffs had always intended to raise, against defendants that plaintiffs had always intended to sue"). The Court finds that this factor weighs in favor of Plaintiffs.
The second factor to evaluate is whether Plaintiffs have been dilatory in amending their complaint to add the individual co-employee defendants. A & G removed this action approximately six weeks after the first Amended Complaint was filed, and Plaintiffs filed their Second Amended Complaint, which named the individual co-employee defendants, less than one month after the case was removed and within the time allowed for amendments as a matter of course. No scheduling order had been entered as of the date of the amendment, and the case was in its early stages. Under these circumstances, the Court finds that Plaintiffs have not been dilatory in amending their complaint to add the non-diverse defendants.
The third factor to consider is whether Plaintiffs will be significantly injured if the amendment is not allowed. While it is true that a defendant's right to seek a federal forum by removal bears some weight, so too does the plaintiff's interest in avoiding duplicate litigation in two separate courts. If Plaintiffs were not allowed to amend their complaint to add the individual co-employee defendants, they would have to continue to litigate their action against A & G and Yale in this Court and would have to bring their claims against the co-employee defendants in the Circuit Court of Dallas County. Under this scenario, many of the same factual and legal questions would be contested in two separate courts, wasting precious judicial resources and increasing the cost of the litigation for all parties. In addition to having to bear the costs of separate litigation to pursue their claims, Plaintiffs could potentially have to sit through two separate trials concerning the death of their loved one. See *1338 Adams , 2017 WL 1828908, at * 5 (noting that disallowance of the amendment would place the plaintiffs "in the unenviable position of having to maintain parallel proceedings ... with the attendant inefficiencies and additional expense that entails"); Thomas v. Eight Mile Nursing & Rehab Center LLC , Civ. A. No. 15-00051-KD-N, 2015 WL 1778359, at *4 (S.D. Ala. April 20, 2015) (allowing amendment and noting that "[t]wo suits would cause Plaintiff to bear the expense of maintaining parallel suits, including duplicative discovery costs and time, and would result in a lack of judicial economy"). "While [P]laintiff may be able to file against [the non-diverse defendants] in a separate lawsuit, the inefficiency of proceeding in parallel forums and the desirability of providing complete relief in one lawsuit" support a finding "that the third factor weighs in favor of allowing the amendment." Holiday Isle , 2008 WL 1756369, at *3.
Consideration of the fourth factor, whether there are other equities bearing on whether this Court should allow the amendment, also weighs in favor of allowing the amendment. This case was only recently removed to this Court. No scheduling order has been entered, and the date for amending pleadings and joining parties has not yet even been set. "Little effort will have been wasted in this case if it is returned to state court, whereas failing to remand it will result in double litigation." Taylor v. Ala. CVS Pharm., LLC , Case No. 7:16-cv-1827-TMP, 2017 WL 3009695, at *9 (N.D. Ala. July 14, 2017). In addition, this action would not have been removable if Plaintiffs had known the identities of the individual co-employee defendants at the outset. Under these circumstances, A & G's choice of a federal forum is a mere fortuity that is not entitled to dispositive weight. The expense, inconvenience, and inefficiency of forcing Plaintiffs to maintain separate, parallel suits in two different courts, as well as the doubling of the expenditure of judicial resources favor allowing the amendment. Thus, the Court concludes that the equities in this case favor allowing Plaintiffs to join the non-diverse defendants under § 1447(e). See Adams , 2017 WL 1828908, at *4-5.
Section 1447(e) states that if the Court permits joinder, the action should be remanded to state court. However, citing Lamar v. Home Depot , 907 F. Supp. 2d 1311 (S.D. Ala. 2012), A & G contends that the Court should sever the worker's compensation claim against Globe and the co-employee claims against the non-diverse co-employee defendants and remand those to state court, while retaining jurisdiction in this Court over the third-party claims against A & G and Yale. Section 1445(c) of the federal removal statute states that "[a] civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States." 28 U.S.C. § 1445(c). In Lamar , a case originating in this district, but with which the majority of other federal courts in this state and others have disagreed, the court held that a worker's compensation claim should be severed from state law claims over which the court had diversity jurisdiction, with the worker's compensation claim being remanded as required by § 1445(c) and the federal court retaining jurisdiction of the remaining state law claims. Id. at 1317. Assuming without deciding whether the Eleventh Circuit would follow Lamar rather than the number of district court cases within the circuit that have rejected that holding, the Court notes that the Lamar holding only supports severance here if the co-employee claim arises under the workmen's compensation laws of the state of Alabama. A & G argues that the co-employee claim does arise under the workmen's compensation laws of the state of *1339 Alabama, while Plaintiffs argue that it does not.
Neither the Eleventh Circuit nor any district court in Alabama has addressed whether actions against co-employees arise under the workmen's compensation laws of the state of Alabama for purposes of § 1445(c) ; however, a district court in Alabama has addressed whether a claim brought pursuant to another provision in the same section of the Alabama Worker's Compensation Act ("AWCA") arises under the workmen's compensation laws of the state of Alabama for purposes of § 1445(c). See Ala. Mun. Workers Comp. Fund, Inc. v. P.R. Diamond Prod., Inc. , 234 F. Supp. 3d 1165 (N.D. Ala. 2017). This Court finds the reasoning in P.R. Diamond persuasive in this case. The plaintiff in that case brought an action against the defendants in state court pursuant to § 25-5-11(d) of the Alabama Code, a provision of the AWCA that allows an injured employee's employer or the employer's insurance carrier to bring a tort action against a third party in the event that the injured employee does not file a lawsuit against the third party. Id. at 1171. The defendants removed the action based on diversity jurisdiction. Id. at 1166. The plaintiff filed a motion to remand the action based on several grounds, including its contention that removal was prohibited by § 1445(c) because its action arises under the workmen's compensation laws of Alabama. Id. at 1171. In addressing this argument, the court stated:
Although the Alabama Worker's Compensation Act is undoubtedly a "workmen's compensation law" of the state of Alabama, and [the plaintiff] is right that it owes its ability to bring this action to § 25-5-11(d), this case does not arise under the Alabama Worker's Compensation Act for purposes of § 1445(c).
In Reed v. Heil Co. , the Eleventh Circuit held that a claim of retaliatory discharge, brought pursuant to Alabama Code § 25-5-11.1, arose under the Alabama Worker's Compensation Act for purposes of § 1445(c). Reed v. Heil Co. , 206 F.3d 1055, 1058-60 (11th Cir. 2000). In doing so, the Court distinguished retaliatory discharge actions from common law tort claims, such as those [the plaintiff] asserts in this case. Id. at 1059 ("Cases focusing on whether common law causes of action 'arise under' workers' compensation laws for section 1445(c) purposes are inapposite."). The Court explained that the "retaliatory discharge cause of action increases workers' willingness to file compensation claims, and it limits employers' ability to discourage them. In so doing, § 25-5-11.1 encourages prompt and thorough medical attention for workplace injuries." Id. at 1060.
The same reasoning does not apply to tort claims brought by the subrogees of injured workers, such as [the plaintiff]. The employer of an injured worker or the employer's insurer can bring claims on behalf of the worker only if the statute of limitations for the worker's own claim has expired. Ala. Code § 25-5-11(d). As a result, actions like the one brought by [the plaintiff] have little effect on the willingness of workers to bring claims, the ability of employers to discourage claims, or the availability of medical care in the workplace. Thus, Reed provides no justification for treating [the plaintiff's] claims as arising under Alabama's workmen's compensation laws. Instead, Reed suggests that tort claims, like [the plaintiff's], should be treated differently from retaliatory discharge claims that do arise under the workmen's compensation scheme.
In addition, persuasive authority outside of the Eleventh Circuit indicates that *1340 tort claims brought in connection with the workmen's compensation statutes of a particular state do not "arise under" those statutes. See Arthur v. E.I. DuPont de Nemours & Co. , 58 F.3d 121, 125 (4th Cir. 1995) (holding that a claim brought pursuant to a provision of a state worker's compensation statute that provides a cause of action for intentional torts did not "arise under" the state's workmen's laws); Houston v. Newark Boxboard Co. , 597 F. Supp. 989, 991 (E.D. Wis. 1984) (holding that, while § 102.29 of the Wisconsin Worker's Compensation Act "may regulate the prosecution of the plaintiff's [personal injury] claims, those claims do not 'arise under' the state workmen's compensation laws, but rather under the common law of tort").
Generally, "[a] lawsuit arises under the law that creates the cause of action." Am. Well Works v. Layne , 241 U.S. 257, 36 S. Ct. 585, 60 L.Ed. 987 (1916). [The plaintiff's] claims of failure to warn, fraudulent representation, and breach of implied warranty were created by the law of tort and contract.... The Alabama Worker's Compensation Act is merely the statutory vehicle by which [the plaintiff] is able to bring the action to court .... Thus, § 25-5-11(d) of the Alabama Worker's Compensation Act "may regulate the prosecution of [the plaintiff's] claims," but the action is ultimately one in tort and contract, and it does not arise under the Alabama Worker's Compensation Act for purposes of § 1445(c). See Houston , 597 F. Supp. at 991. Accordingly, § 1445(c) does not require remand in this case.
P.R. Diamond , 234 F. Supp.3d at 1171-72 (footnote omitted) (emphasis added).
Section 25-5-11(c) is likewise merely the statutory vehicle by which injured workers can bring a tort claim against their co-employees. Unlike the retaliatory discharge provision which was at issue in Reed , which created a cause of action for workers to seek compensation against employers who retaliate against them for pursuing benefits under the AWCA, § 25-5-11(c) restricts the ability of workers to pursue certain causes of action against co-employees that existed prior to implementation of the AWCA. Under these circumstances, it can hardly be said that Plaintiff's action against the co-employees "arises under" workmen's compensation laws for the purpose of § 1445(c).
The Court finds no grounds to exercise any discretionary authority it may have to sever the co-employee claims from the third-party tort claims. See Fed. R. Civ. P. Rule 21 ("The court may also sever any claim against a party."). Because the issue of the mechanism of the injury to Shanks will be contested based on the allegations of the complaint, as well as damages, there will clearly be common questions of fact in the co-employee claims and the third-party tort claims. Judicial economy is best served under these circumstances by keeping the co-employee claim joined to the third-party tort claim. Based on the foregoing, the Court finds that Plaintiff's co-employee action is not required to be nor should be severed from the remaining tort claims.
CONCLUSION
Because the addition of non-diverse co-employee defendants in this case destroys complete diversity and because the Court finds no ground for severance of the co-employee claims from the third-party tort claims, this action is due to be remanded. Accordingly, it is RECOMMENDED that Plaintiff's motion to remand (Doc. 16) be GRANTED and that this case be REMANDED to the Circuit Court of Dallas County, Alabama.
*1341 NOTICE OF RIGHT TO FILE OBJECTIONS
A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1) ; Fed. R. Civ. P. 72(b) ; S.D. Ala. Gen. LR 72(c)(1) & (2). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error, if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.
DONE and ORDERED this the 12th day of March, 2019 .

Claims 2 through 7 do not specify whether the Plaintiffs seeking redress are Tommie Jean and Willie Lee Shanks in their individual capacities or as "next to [sic ] friends."

In Plaintiffs' FAC, it is unclear which Plaintiffs are pursuing the claims listed above, save for claim 10. In all other claims, the requests for relief are made by the Plaintiffs, generally, against the Defendants. However, Claim 10 in the FAC indicates that only Stephen's parents were pursuing a loss of consortium claim at that time. There, the paragraph immediately preceding Plaintiffs' prayer for relief is as follows: "As a proximate result of Defendant's [sic ] conduct, Plaintiff [sic ] Tommie Jean and Willie Lee Shanks lost the love, affection, and services of their child, Stephen Jamar Shanks." (Doc. 1-7, p. 15).

See Lamar , 907 at 1315 (2012) (internal citations and quotations omitted):
Section 1441(a) authorizes removal of any civil action brought in a State court of which the district courts of the United States have original jurisdiction. Section 1332(a) furnishes original jurisdiction over diversity actions with a threshold amount in controversy, so removal of a diversity action is accomplished through Section 1441(a). This case was removed based on diversity jurisdiction, and therefore removal was proper under Section 1441(a).

Listed as Courts III - V in Plaintiffs' SAC.

This Claim mirrors Plaintiffs' Loss of Consortium Claim as contained in their FAC. See n. 2.

This Court notes several differences between this case and Lamar. In Lamar , the Court, sitting in removal jurisdiction based on diversity, was tasked with determining whether § 1445(c) required plaintiff's entire action to be remanded. Lamar , 907 F. Supp. 2d at 1312 (noting Reed v. Heil Co. , 206 F. 3d 1055 (11th Cir. 2000) as "the only published decision of the Eleventh Circuit known to have addressed the scope of remand under 28 U.S.C. § 1445(c).") (Emphasis added). There, the parties agreed that plaintiff's breach of contract, fraud, and outrageous conduct claims did not arise under the Alabama Worker's Compensation Act. Id. Here, the parties contest the precise issue of whether claims arise under the Alabama Worker's Compensation Act. Also, unlike Lamar , the claims at issue here are specifically addressed by the Alabama Worker's Compensation Act. See, e.g. , Ala. Code § 25-5-11(c)(2) ; Doc. 15, pp. 6 - 7. Lamar remains the law of the District; this case's factually dissimilar posture does not change that.

See, e.g., Mobile & O. R. R. Co. v. Thomas , 42 Ala. 672 (1868) ; Mobile & M. R. Co. v. Smith , 59 Ala. 245, *253, 1877 Ala. LEXIS 85 (Ala. December 1, 1877) (reversing lower court's judgment where the following requested jury instruction was not given: "If the jury believe [sic] the evidence before them, on the subject of the nature of the employment of the plaintiff, Mitchell, O'Brien and Price by the defendants, that they were all servants of the corporation, that the plaintiff cannot recover for any act of negligence either of omission or commission of either, or all, or any one or more of them, if it appears from the evidence that, in employing and retaining them in employment, the defendant took due and proper care to select and return prudent and competent men for the several employments in which they were respectively engaged."); Id. ("... as between their employers and themselves, employees take the risk of any damage they may sustain from the perils incidental to the service in which they engage including those arising from the negligence of others engaged therein, unless they are chargeable upon the misconduct or negligence of the employer."); Smoot v. Mobile & M. R. Co. , 67 Ala. 13 (1880) (refusing to impose liability upon the employer for supervisor's negligence where supervisor ordered the employee to couple train cars together and employee knew that the cars were ill-paired, resulting in employee's injuries: "An employee cannot recover for an injury occurring by the negligence of his co-employee ... It is, however, the negligence of the master, for which liability to a servant can be visited upon him, for the rule is settled, that he cannot be made liable for injuries proceeding from other servants in the same employment. Injuries, resulting from such cause, are of the risks incident to the employment, which it is intended the servant contemplates, and consents to incur, when he enters the service.").

Prior to 1886.

See, e.g., Smoot , 67 Ala. at 17 (articulating an employee's assumption of risk at his place of employment.)

The Court notes that these cases do not speak to the exact proposition that an employee could hold a co-employee liable for willful conduct. However, the cases' rule that an employee could be held liable for his tortious willful conduct against other appears generally applicable co-employee actions.
For instance, in 1939, following an amendment to Alabama's Workers' Compensation Act, the State Legislature authorized legal proceedings "against any third party other than the employer to recover damages notwithstanding the payment by the employer or his liability to pay compensation." 1 Alabama Workers Compensation Law and Handbook § 2.03. This was later interpreted by the Alabama Supreme Court to mean, "[t]he liability of a third party is that at common law, the act not taking away the common-law rights of recovery against such third party but continuing existing rights and remedies." Harris v. Louisville & N. R. Co. , 237 Ala. 366, 368, 186 So. 771, 771 (1939). From this passage, it is clear that the Legislature's authorization was not granting new remedies meant to displace old ones. Instead, the amendment preserved and limited those available at common law. This trend can be seen through further amendments made in 1961 and 1985. 1 Alabama Workers Compensation Law and Handbook §§ 2.03, 2.10; United States Fire Ins. Co. v. McCormick , 286 Ala. 531, 536, 243 So. 2d 367, 371 (1970) (finding "where there is no expressed legislative mandate to the contrary, that a co-employee or fellow servant is a third party tortfeasor within the meaning of the Workmen's Compensation Act.") (superseded by statute as stated in Reed v. Brunson , 527 So. 2d 102 ).

Further still, the issue in Reed did not deal squarely with the issue of whether "willful conduct" actions arose under the Alabama Worker's Compensation Act. Instead, that court was tasked with determining, "whether the Legislature has the power to eliminate co-employee suits grounded in negligence or wantonness." Reed , 527 So. 2d at 116 (Ala. 1988).

As stated above, the standard for determining whether a claim arises under a law concerns whether the Act created the cause of action. These provisions, read together, tend to show that the Act merely preserves and limits the types of actions available against co-employees, as opposed to completely displacing the common law. As noted in other cases,
While the Eleventh Circuit has not interpreted the language "arising under the workmen's compensation laws" in § 1445, other courts have found that language to mean the same as "arising under" does in 28 U.S.C. § 1331. [...]
In the Eleventh Circuit, "arising under" for purposes of § 1331, means the law creates the cause of action, or a substantial disputed issue of the law is a necessary element of the claim. See Pacheco de Perez v. AT & T Co. , 139 F.3d 1368, 1373 (11th Cir. 1998). Applying that standard to § 1445(c), the court explained in Payne that a statute can arise under workers' compensation laws if the workers' compensation law creates a cause of action that usurps a traditional common law action or if the statute operates as a necessary element to a tort claim . Payne [v. J.B. Hunt Transport, Inc.] , 154 F. Supp. 3d [1310] at 1315 [ (M.D.Fla. 2016) ] ; see also Alabama Home Builders Ins. Fund , 2012 U.S. Dist. LEXIS 84907, 2012 WL 2359402 at *3. If, on the other hand, the duty owed is a general duty that can apply in a "broad spectrum of relationships," the claims are only related to the workers' compensation statutes and do not arise under them . Patin v. Allied Signal, Inc. , 77 F.3d 782, 788 (5th Cir. 1996) ; see also Moore v. CNA Foundation , 472 F. Supp. 2d 1327, 1331 n.* (M.D. Ala. 2007). If the facts involved in a workers' compensation claim and a tort claim are the same, that merely means that the tort claims are "related to," not arising under, workers' compensation law. Sasser v. Ryder Truck Rental , No. 2:06cv593-CSC, 2008 U.S. Dist. LEXIS 160, 2008 WL 45736, at *6 (M.D. Ala. Jan. 2, 2008).
Steube v. Virco Inc. , No. 2:16cv1008-WHA, 2017 U.S. Dist. LEXIS 17652 at *5-6 (M.D. Ala. Feb. 8, 2017) (emphasis added).

Though this appears to be a matter of first impression, as noted in Judge Murray's R & R (Doc. 30, p. 12), at least one court in this Circuit treated co-employee claims concerning willful conduct as "arising under" Alabama's Worker's Compensation Act. However, it seems these claims were categorized and pursued as such because neither party contested the issue of whether those claims "arose under" Alabama's Worker's Compensation Act. See Treadwell v. Dow-United Techs. , 970 F. Supp. 974, 990, 47 Fed. R. Evid. Serv. (Callaghan) 708 (M.D. Ala. March 21, 1997) :
Although the Alabama Workers' Compensation Act generally provides immunity to the employer, its compensation carrier, and its officers, directors, agents, servants, and employees, Alabama Code § 25-5-11(b)(1993) grants workers' compensation claimants a civil cause of action for injuries resulting from the "willful conduct" of their co-employees. See Reed v. Brunson , 527 So. 2d 102, 108 (Ala. 1988). [...] Section 25-5-11(c)(2) defines willful conduct as a "purpose or intent or design to injure another." In pursuing such a claim, "plaintiff need not show that the co-employee defendant specifically intended to injury the person who was injured."
See also, Musgrove v. Kellogg Brown & Root, LLC , 2013 U.S. Dist. LEXIS 61161 *, 2013 WL 1827583 (S.D. Ala. April 29, 2013) ("Because the plaintiff argues that his claims arise from violations of the workers' compensation law, the Court concludes that he makes no argument these claims arise under those laws, as Section 1445(c) requires. Were he to make such an argument, it would fail.").

A & G acknowledges that the worker's compensation claim against Globe is subject to the jurisdictional bar of 28 U.S.C. § 1445 for such claims. (Doc. 1 at p. 2).

Section 1447(e) provides: "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."